UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEFFREY JONES,          :     Hon. Robert B. Kugler
      Petitioner,       :
                        :     Civ. No. 14-4655 (RBK)
      v.                :
                        :     Crim. No. 12-560 (RBK)
                        :
UNITED STATES OF AMERICA, :
      Respondent.       :

---

**UNITED STATES' OPPOSITION TO PETITION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL
CUSTODY PURSUANT TO 28 U.S.C. § 2255**

---

PAUL J. FISHMAN
UNITED STATES ATTORNEY
970 Broad Street
Newark, New Jersey

On the Brief:

Steven D'Aguanno
Assistant United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101

Dated:   February 10, 2015

The United States of America, by and through its attorney, Paul J. Fishman, United States Attorney for the District of New Jersey (Steven D'Aguanno, Assistant United States Attorney, appearing), respectfully submits its opposition to Jeffrey Jones's ("Jones") Petition to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Petition").

## I.   Factual Background and Procedural History

### The Complaint

On January 23, 2012, Jones was charged in a one-count criminal complaint with conspiring to distribute and possess with intent to distribute crack cocaine in violation of Title 21, United States Code, Section 846.  As described at length in the Pre-Sentence Report ("PSR"), see PSR Jones ¶¶ 13-103, Jones played a leading role in the distribution of cocaine and crack cocaine in Camden, New Jersey during a seventeen-year period between 1990 and 2007.

### The Plea Agreement

On July 24, 2012, Jones executed a guilty plea agreement with the Government.  According to the plea agreement, Jones agreed to plead guilty to a one-count Information which charged him with conspiracy to distribute cocaine and crack cocaine in violation of Title 21, United States Code, Section 846.  Jones and the

Government agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the sentence to be imposed upon Jones should be 240 months imprisonment and 12 years of supervised release.  In return, the Government agreed to not initiate any further criminal charges against Jones for the distribution of cocaine and crack cocaine between January 1990 and September 2007.  In addition, Jones's Plea Agreement also included a mutual "Waiver of Appeal and Post- Sentencing Rights:"

> As set forth in Schedule A, this Office and Jeffrey Jones waive certain rights to file an appeal, collateral attack, writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255.

Plea Agreement (attached hereto as Exhibit A) at 3.

Schedule A provided, in relevant part, that

> Jeffrey Jones knows that he has, and voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence does not exceed a term of imprisonment of 240 months and 12 years of supervised release.

Exhibit A 6-7.  Thus, Jones agreed not to appeal or seek collateral relief from his sentence so long as it was equal to or less than 240 months imprisonment and 12 years supervised release.

3

## The Change-of-Plea Hearing

On August 21, 2012, Jones appeared before this Court for a change-of-plea hearing. The District Court carefully addressed the appellate/collateral attack waiver provision and took pains to ensure that Jones understood it:

Q. [THE COURT] Now in paragraph eight, you give up some very important rights to appeal. Do you understand normally you'd have the right to appeal or file a motion or a writ or in some way attack any sentence that I impose upon you. Do you understand that?

A. [JONES] Yes.

Q. The Government has rights to appeal or file motions or writs regarding any sentence I impose. But under paragraph eight, you're willing to give up these very important rights to appeal or to file a motion or a writ or in any way challenge the sentence under a certain condition and that condition is, that if I sentence you to a sentence of imprisonment in accordance with this plea agreement, then you're going to give up your rights to appeal or file a motion or a writ. In other words, if I do agree to give you 240 months, that's it and you're never going to able to change that sentence. Do you understand that?

A. Yes.

Q. The government's also agreeing that it's going to not file any appeals or motions or writs if I do follow the agreement and give you at least 240 months. Do you understand and agree with that?

A. Yes.

Q. Furthermore in this paragraph you agree that any of these other stipulations are binding and you cannot appeal or file a motion saying that I was wrong to accept the stipulation because you've agreed to it. Do you understand and agree with that?

A. Yes.

Q.  Paragraph nine merely provides that if either side violates paragraph eight, that is if they file an appeal or a motion or a writ when they promised not to, the other side gets to ask the court to dismiss it because they promised to file that appeal.  Do you understand and agree to that?

A.  Yes.

Guilty Plea Transcript (attached hereto as Exhibit B) at 23-25.

In addition, the Court permitted the Government to emphasize to Jones that he was waiving his appellate rights as follows:

Q. [GOVERNMENT ATTORNEY]  Just one other thing, your Honor, which is that I understand from speaking to counsel that in addition to all the pretrial rights and this may have been covered by the court, the defendant understands that he's not going to be able to litigate.  There's going to be no further litigation either in this court if this plea is accepted or in an Appellate Court of any issues that could have been brought up pretrial like suppression, that he could have filed a suppression motion or Speedy Trial motion or any other motion that he understands that this is an unconditional plea that waives all of those issues.

Q.  [THE COURT]  You know that.

A.  [JONES]  Yes.

Q.  [THE COURT]  If I accept this, it's over.

A.  [JONES]  Yes.

Q.  [THE COURT]  All right.  You're not going to be able to challenge anything about this prosecution or the sentence you get.  Do you understand that?

A.  [JONES]  Yes.

Exhibit B at 38-39.  This Court deferred its decision regarding

acceptance of the guilty plea pending completion of the PSR.

The PSR prepared by the Probation Office set forth Jones's offense conduct in exhausting detail.  In so doing, the PSR described Jones's role in the distribution of cocaine and crack cocaine covering a seventeen-year period between 1990 and 2007.  PSR ¶¶ 13-103.  The Probation Office concluded that the Total Offense Level for Jones's conduct was 43, with a Criminal History Category of III, resulting in an advisory Guidelines range of life imprisonment.[1]

**The Sentencing Hearing**

On February 13, 2013, following briefing and argument by the parties, this Court accepted the guilty plea pursuant to Fed.R.Crim.P. 11(c)(1)(C) and sentenced Jones to 240 months in prison and 12 years of supervised release.  In doing so, the Court acknowledged the reasons justifying the plea agreement, notably the difficulty the Government would have encountered in bringing Jones to trial, the time that Jones had spent in prison for some of the underlying criminal activity, and the fact that Jones had not been provided with immunity from murder or other crimes of violence.  Sentencing Transcript (attached hereto as Exhibit C) at 15-16.  The judgment was entered on the docket on that date. See

---

[1] Jones also faced a statutory maximum sentence of life imprisonment under Title 21, United States Code, Section 841(b)(1)(A), and, as recognized by this Court, "there's no doubt . . . that were [Jones] to go to trial and be convicted on this charge, he would get a life sentence."  Exhibit C at 16.

6

United States District Court for the District of New Jersey, Case 12-cr-569 (RBK), Docket Entry 20.

Jones did not file a direct appeal challenging his guilty plea or sentence. Thus, his judgment of conviction became final on February 27, 2013, fourteen days after the judgment was entered on the docket. As a result, barring certain exceptions not applicable here, he was required to file any motion under 28 U.S.C. § 2255 no later than February 27, 2014, one year after the judgment became final. See 28 U.S.C. § 2255(f)(1) ("A 1 year period of limitation shall apply to a motion under this section, The limitation period shall run from the latest of . . . (1) the date on which the judgment of conviction became final."); Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed"); see also Barrett v. United States, 961 F.Supp.2d 403, 407 (D.Conn. 2013) ("Where the petitioner did not file a direct appeal, the section 2255(f)(1) limitations period begins to run upon the expiration of the period for filing that appeal.").

### Jones's Section 2255 Petition

On July 25, 2014, Jones belatedly filed a petition under 28 U.S.C. § 2255.  On August 5, 2014, this Court entered an Order directing Jones to file a complete, signed petition.  On August

21, 2014, Jones filed the instant petition.  For purposes of determining the timeliness of Jones's petition, the government will utilize the date of the first filing, July 25, 2014, as contemplated by this Court's Order entered on August 5, 2014.  As discussed below, Jones's petition is untimely and should be dismissed.

**II.  THE PETITION SHOULD BE DISMISSED BECAUSE IT WAS NOT FILED WITHIN THE TIME PERMITTED BY STATUTE.**

The Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, Tit. I, 110 Stat. 1217 ("AEDPA"), took effect in April, 1996.  Under its terms, a defendant has one year within which to file a request for relief under Section 2255.  28 U.S.C. § 2255 (paragraph 6).  The one-year period runs from the latest of four specified events:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been

8

discovered through the exercise of due diligence.

Id. In this case, no governmental action has impeded the petitioner in filing his claim, and no facts have been recently discovered that would support petitioner's action. Nor has petitioner asserted a new right that has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Thus, the one-year time limit began to run on the date that the judgment of conviction became final, which occurred on February 27, 2013. His petition was therefore untimely and should be dismissed. See, e.g., Dietsch v. United States, 2 F. Supp. 2d 627, 634-36 (D.N.J. 1998) (dismissing untimely petition); Close v. United States, 336 F.3d 1283 (1286 (11th Cir. 2003) (upholding dismissal of 2255 motion filed 1 business day after 1-year deadline expired).

The limitations period was not equitably tolled in this case. See Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998) (finding one-year period is akin to statute of limitations and noting that equitable tolling applies only where application of period of limitations would unfairly violate principles of equity). "'[A] litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he was been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" Brown v. United

9

States, 2011 WL 2148181 (D.N.J.) *2, quoting, Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). "Equitable tolling may be applied, for instance, when the petitioner has been actively misled by the respondent, or when petitioner files a timely petition in the wrong forum." Brown v. United States, 2011 WL 2148181 at *2, citing, Urcinoli v. Cathel, 546 F.3d 269, 272 (3d Cir. 2008).

No such extraordinary circumstance is present here.  In his petition, Jones contends that he was unable to file his petition in a timely manner because he was "placed in hold-overs & SHU for over 6 months without access to the Court's [sic] [and] his legal material."  Memorandum of Law in Support of Petition at 7.  In support of his argument, Jones relies upon a one-page printout of the different Federal Bureau of Prisons facilities where he was held between October 2010 and April 2014.  Id.  The printout, however, offers no support for Jones's contention that he was denied access to the federal courts or his legal materials.  Even accepting Jones's assertion as true for purposes of this motion, he cannot establish the requisite extraordinary circumstance to qualify for equitable tolling relief.  "[A]n untimely petitioner must show that they were nevertheless diligent - "excusable neglect is not sufficient."  United States v. Smith, 2011 WL 5549095 at *2, citing Schlueter v. Varner, 384 F.3d at 77.  Jones offers no

10

explanation for his failure to file his petition in April 2014 when he presumably regained access to his legal materials. Instead, Jones waited another 3 months to file the instant petition.  In light of that delay Jones cannot demonstrate any such extraordinary circumstance or that he acted diligently despite such a circumstance.  Since Jones cannot carry his burden for tolling the one-year period, his application is time-barred and should be dismissed.

## III. JONES'S CLAIMS

In his petition, Jones raises multiple grounds for relief. Jones claims that 1) the government failed to produce exculpatory and impeachment material; 2) the Court erred by not applying the appropriate standard of proof at sentencing regarding a purported ten-year enhancement; and 3) his guilty plea was not knowing and intelligent.  Memorandum of Law at 9-20.  In addition, Jones contends that counsel was ineffective with respect to these issues.  For the reasons set forth below, Jones's claims are meritless and barred by the collateral attack waiver in his plea agreement, and thus should be denied.

## IV.  ARGUMENT

### A.  Legal Standard.

A petition under 28 U.S.C. § 2255 is a collateral attack on the legality of a sentence.  See In re Dorsainvil, 119 F.3d 245,

249 (3d Cir. 1997); United States v. Cannistraro, 734 F.Supp. 1110, 1119 (D.N.J. 1990).[2] The grounds for collateral attack of a sentence pursuant to Section 2255 are limited, see United States v. Addonizio, 442 U.S. 178, 184 (1979), and the petitioner in a Section 2255 case bears the burden of establishing any claim asserted in the petition.  See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1081 (3d Cir. 1985); Word v. United States, 604 F.2d 1127, 1130 (8th Cir. 1979) ("In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner.").  A petition under Section 2255 will be granted only if the sentence results "in a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); United States v. Cleary, 46 F.3d 307, 311 (3d Cir. 1995).

------

[2] Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . .

28 U.S.C. § 2255.

**B.    Jones's Claims Of Ineffective Assistance of Counsel Are Meritless.**

One method of collateral attack under § 2255 is a claim of ineffective assistance of counsel.  Jones claims that counsel was ineffective for the reasons set forth above.  Although this Court conducted a thorough colloquy of Jones at the change-of-plea hearing regarding his understanding of his waiver of his right to bring collateral challenges against his conviction and sentence, and although the waiver was not limited as to the kinds of claims that Jones could raise in a § 2255 so long as the stipulated sentence was imposed, the Government will not argue here that Jones' ineffective assistance claims have been waived.  Effective October 14, 2014 (after the plea agreement in this case was finalized and after the change-of-plea hearing took place), the Deputy Attorney General of the United States Department of Justice instructed federal prosecutors that they should "no longer seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel."  The new policy was made retroactive for cases in which a defendant has previously waived his rights to raise an ineffective assistance claims.  "For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance

13

resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve."

As shown herein, Jones has failed to demonstrate that any errors by his plea counsel resulted in prejudice under the Strickland standard.  Nor do any of his claims "raise a serious debatable issue that this Court should resolved."  Nevertheless, consistent with the Department's current policy, the Government requests that this Court address Jones' ineffective assistance claims on the merits, and not deem them waived by operation of the waiver provision in the plea agreement.  As for Jones' claims that do not sound in ineffective assistance of counsel, however, this Court should find that they have been waived.

Because Jones was sentenced in accordance with his appellate and collateral attack waiver, this Court should enforce that waiver and dismiss those claims that are not based on plea counsel's alleged ineffective assistance.  Jones's waiver of his right to collateral attack was made knowingly, voluntarily, and with the assistance of counsel and its enforcement does not work a miscarriage of justice.  In any event, Jones's claims are contradicted by the record and his sworn statements to this Court at his guilty plea hearing, and are thus meritless.

Criminal defendants may waive both constitutional and statutory rights, including their right to collateral attack, provided they do so voluntarily, with knowledge of the nature and consequences of the waiver, and provided that the waiver's enforcement does not work a miscarriage of justice. See, e.g., United States v. Mabry, 536 F.3d 231, 236-37 (3d Cir. 2008) (collecting cases). In the context of a waiver of collateral attack, the Court must consider the validity of the waiver, specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice. Id.

Jones bears the burden of presenting an argument that would render his waiver unknowing or involuntary, and the Court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that it enforcement works no miscarriage of justice. See United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001). The Court may review the terms of the plea agreement and the plea colloquy to determine the knowing or voluntary nature of the waiver. See United States v. Gwinnett, 483 F.3d 200, 203-04 (3d Cir. 2007). Here, Jones does not even address the waiver of his right to challenge his sentence or conviction in a collateral proceeding, much less claim that his waiver was other than knowing and voluntary. This Court's thorough

15

colloquy regarding the waiver provision would refute any such claim, had it been advanced. Nor has Jones attempted to show that enforcement of the waiver provision in the plea agreement would amount to a miscarriage of justice. See generally United States v. Erwin, 765 F.3d 219, 228 (3d Cir. 2014)(where defendant's "sentence did not exceed the 240-month maximum sentence prescribed by statute, let alone the higher advisory Guidelines range of 262 to 327 months" and defendant "largely acquiesced in the claimed error by failing to lodge a contemporaneous objection," "[w]e cannot conclude that, under these circumstances, enforcing Erwin's waiver would work a miscarriage of justice.").

Although the Government will not argue that Jones has waived his ineffective assistance claims, the Court should deny relief on those claims as well, as they are meritless.  The United States Supreme Court determined in Strickland v. Washington that to prevail on an ineffective assistance of counsel claim, the petitioner must satisfy a stringent two-part test: the petitioner must demonstrate that (1) counsel's performance was deficient, and (2) that this performance actually prejudiced the petitioner.  466 U.S. 668, 687 (1984).  A counsel's performance is deficient if the errors made were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Id.

To minimize the possible distortions of hindsight, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional  assistance." Strickland, 466 U.S. at 689; United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). See Michael v. Louisiana, 350 U.S. 91, 101 (1951)(holding that the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy).   Thus, in assessing whether the assistance was reasonable, the court must be "highly deferential" and not "second-guess counsel's assistance after conviction." Strickland, 466 U.S. at 689; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996).  The court should only find ineffective counsel when there are fundamental deficiencies in representation and extensive prejudice as a result.

With regard to the second prong, a petitioner has been actually prejudiced only if counsel's errors were so serious that they deprived the petitioner of a fair, reliable sentence. Strickland, 466 U.S. at 687.  Stated differently, the petitioner must show with reasonable probability that, but for the defective counsel, the result would have been different.  Id. at 694.  A "reasonable probability" is more than a theoretical possibility, Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992); it is "a

probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694.

The Supreme Court has stated that "Strickland's standard . .
. is highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382
(1986). "It is not enough for the defendant to show that the
errors had some conceivable effect on the outcome of the
proceeding. Virtually every act or omission of counsel would meet
that test . . . and not every error that conceivably could have
influenced the outcome undermines the reliability" of that
outcome. Strickland, 466 U.S. at 693 (citation omitted). Rather,
the defendant must "affirmatively prove prejudice." Id. at 693.
"Totally speculative" arguments regarding prejudice are
insufficient, as they do not show "a probability sufficient to
undermine confidence in the outcome." See Baker v. Barbo, 177
F.3d 149, 154 (3d Cir.1999). In addition, not only is there a
strong presumption that counsel rendered adequate assistance,
Strickland, 466 U.S. at 690, but "[i]f it is easier to dispose of
[the] ineffectiveness claim on the ground of lack of sufficient
prejudice, . . . [then] that course should be followed." Id. at
697.

Here, the Court may dispose of each of Jones's
ineffectiveness claims under the second prong of Strickland
without an evidentiary hearing because it is clear from the record

18

that even if defense counsel had taken the actions about which Jones now complains, those actions would not have produced a different result.  See U.S. v. Friedland, 83 F.3d 1531, 1537-38 (3d Cir. 1996) (affirming decision of district court (Irenas, J.), which denied relief without an evidentiary hearing under Section 2255 because, even under the petitioner's view of the facts, he was not entitled to relief); United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992); Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  See also Aleman v. United States, 878 F.2d 1009, 1012 (7th Cir.1989) (noting that the district court reviewing petitioner's 2255 claim was also the presiding judge at the petitioner's trial and thus had a familiarity with the case that made him "uniquely suited to determine whether a hearing was necessary").  Jones has not and cannot "affirmatively prove prejudice," and therefore his petition should be dismissed. Strickland, 466 U.S. at 693.

Given Jones's knowing and voluntary guilty plea, he cannot meet his burden of establishing prejudice within the meaning of Strickland.  In 2011, the Third Circuit reaffirmed the heavy burden facing defendants in these circumstances:

> In a challenge to a guilty plea based on ineffective assistance of counsel, the prejudice inquiry takes the form of "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." [Hill v. Lockhart, 474 U.S. 52, 59,

19

> 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)].  "[I]n
> order to satisfy the 'prejudice' requirement
> [of Strickland], the defendant must show that
> there is a reasonable probability that, but
> for counsel's errors, he would not have
> pleaded guilty and would have insisted on
> going to trial."   Id.

United States v. Orocio, 645 F.3d 630, 643 (3d Cir. 2011)

(emphasis in original).  Even assuming for the sake of argument

that counsel's performance somehow affected the outcome of the

plea process, Jones cannot satisfy the prejudice requirement

because the record conclusively demonstrates that Jones would not

have insisted on going to trial in light of the potential sentence

of life imprisonment he faced if convicted at trial.  Jones

received the benefit of the bargain he negotiated and any claim to

the contrary that counsel's performance somehow affected the plea

process is emphatically belied by the record.

   **C.   Jones's Documentary Claims Are Meritless.**

   Jones claims that the Government improperly withheld "core

exculpatory [and] impeachment material," and, as a result, his

guilty plea was not knowing and voluntary.  Memorandum of Law at

13-14.  Specifically, Jones claims that the Government withheld

information regarding various cooperating witnesses the Government

was prepared to call as witnesses had Jones not pleaded guilty.

In addition, Jones baldly asserts that counsel was somehow

ineffective during the guilty plea process despite Jones's sworn

statement during the guilty plea process and the extremely favorable terms of his guilty plea.  Jones's claims are meritless.

To establish a due process violation under Brady v. Maryland, 373 U.S. 83 (1963), a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment. United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005) (quotation omitted). In addition, "the government is not obliged under Brady to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." Id. (quotation omitted).

Importantly, Jones was never indicted on the charge at issue here, but rather waived his right to a grand jury and entered a guilty plea to an Information.  Prior to his plea, Jones was charged only by way of criminal complaint describing much of the conduct that ultimately resulted in his guilty plea.  As such, the case was never listed for trial, and there was no formal Rule 16 discovery.  In United States v. Brown, 250 F.3d 811 (3d Cir. 2001), the Third Circuit specifically considered, and rejected, a motion to withdraw a guilty plea because of alleged Brady violations.  In doing so, the Third Circuit noted that it is an open question as to whether Brady even requires the disclosure of exculpatory information prior to the entry of a guilty plea.  250

21

F.3d at 816, n.1.  Similarly, the Supreme Court, in United States v. Ruiz, 536 U.S. 622 (2003), held that the Government is not obligated to produce material impeachment evidence prior to a guilty plea, because "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."  536 U.S. at 630.

There is simply no authority for the proposition that the Government must provide any discovery to an unindicted subject of an ongoing investigation.  In United States v. Underwood, 174 F.3d 850 (7th Cir. 1999), the Seventh Circuit squarely rejected an argument almost identical to the one that the petitioner makes here.  In that case, a defendant who had been indicted for two firearms offenses agreed, in order to halt an ongoing investigation, to plead to one firearms offense and an information charging him with money laundering.  174 F.3d at 851.  The defendant later moved to withdraw his guilty plea, on the basis that he had not had an opportunity to review the Government's evidence on the money laundering offense, and that information in

the pre-sentence report was "false and not provable."  174 F.3d at 852.

The Seventh Circuit upheld the district court's decision to deny the defendant's motion to withdraw his plea.  In doing so, the appellate court held that "a guilty plea entered by a defendant who does not see the prosecution's hand in advance will still be voluntary if, as was true in this case, the plea follows disclosure of an adequate factual basis."  Id. at 854. The circuit court further stated that the defendant "was under no compulsion to negotiate with the government, and all he needed to do was wait for a superseding indictment if in weighing his options he wanted to assess the discovery that would become available under Rule 16."  Id.

Jones's situation is quite similar.  At the time he entered his guilty plea, the Government had not presented any charges to the grand jury.  The Government was still preparing the case regarding Jones's involvement in distributing cocaine and crack cocaine in Camden between 1990 and 2007 for presentation to a grand jury.  Jones was well aware from the criminal complaint that the Government was relying on multiple cooperating witnesses in support of its prosecution of Jones.  Specifically, the detailed, 27-page complaint set forth information provided by seven cooperating witnesses who provided specific information about

23

their involvement with Jones in selling drugs at different times over a 17-year period.

Just like the defendant in Underwood, if Jones felt that the detailed information contained in the criminal complaint was insufficient, he could have refused to waive his right to a grand jury presentation, and received the materials in Rule 16 discovery.  Instead, Jones went ahead and entered a knowing and voluntary plea.  Of course, had Jones rejected the Government's plea offer and insisted on forcing the Government to indict him, there is no guarantee that he would have received the same favorable plea offer that he received by waiving his right to an indictment.  Jones has no right to have his cake and eat it too: to take the benefits of the favorable pre-indictment plea offer and then claim that he should have been provided with discovery to which he only would had been entitled had he rejected the plea offer.  This Court should reject his claim, in violation of the terms of his plea agreement simply because he has had a change of heart regarding his decision to plead guilty.

Given that Jones had no right to the disclosures he now claims were improperly denied, plea counsel could not have been ineffective for declining to demand the production of information that Jones had effectively waived by pleading guilty prior to indictment.  Although plea counsel certainly could have requested

24

such discovery, as a courtesy, before counseling Jones to accept the very favorable plea offer, Jones cannot establish that counsel rendered constitutionally deficient assistance merely because he did not make that request.

Further, even if Brady applies in this case, no violation occurred here. As the Court is well aware, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the government must disclose to the defense evidence that is material and exculpatory. See Landano v. Rafferty, 856 F.2d 569, 573 (3d Cir. 1988). The protections of Brady, however, are not unlimited. A violation of Brady occurs only where the evidence in question is 1) suppressed by the government, 2) favorable to the defense, and 3) material to guilt or punishment. See United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005).

As the Third Circuit observed in Brown, "'the Constitution is not violated every time that the government fails or chooses not to disclose evidence that might prove helpful to the defense.'" Id. at 819 (internal quotation omitted). Instead, "[t]he prosecution's failure to disclose evidence rises to the level of a due process violation 'only if the government's evidentiary suppression undermines confidence in the outcome of the trial.'" Id. (internal quotation omitted). In Brown, the Third Circuit concluded that, based upon the defendant's factual basis in open

court, corroborating evidence, and a confession, the defendant's motion "has not undermined our confidence in the outcome of this case." Id.  Similarly, in light of Jones's responses to the factual basis questions during his change-of-plea hearing, coupled with the corroborative evidence the Government would have produced at trial, Jones's claims that the Government improperly withheld exculpatory and impeachment information do not undermine confidence in Jones's guilty plea.

Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.  Blackledge v. Allison, 431 U.S. 63, 74-75 (1977); see also, Nwachia v. United States, 891 F.Supp. 189, 194 (D.N.J. 1994).  At Jones's change-of-plea hearing, this Court conducted an exhaustive colloquy of Jones regarding the rights he was relinquishing by pleading guilty.  Specifically, Jones testified that he was 35 years old, that he had gone to the twelfth grade, that he fully understood everything that was happening during the guilty plea hearing, and that he had not consumed any drugs, medication, or alcoholic beverages prior to the hearing.  Exhibit B at 14-17.  In addition, Jones stated that he had sufficient time to discuss his case with his attorney and that he was satisfied with his attorney's representation.  Id. at 15.  Finally, both counsel for Jones and the government indicated

that they were satisfied that there was a sufficient legal an

factual basis for Jones's to enter a guilty plea.  Id. at 30-32.

    With respect to the specific rights Jones was waiving by

pleading guilty, he acknowledged that he had a right to be

indicted by a grand jury, that he did not have to proceed by way

of an information, and that he had discussed the waiver of the

indictment requirement with counsel.  Id. at 3-4.  Jones also

acknowledged that he had a right to proceed to a jury trial, that

he was presumed innocent, that the government had the complete

burden of proof, and that he could call witnesses in his defense.

Id. at 25-26.  At no point during the guilty plea colloquy did

Jones indicate that he wished to go to trial or that he wanted to

review additional information about the Government's cooperating

witnesses.

    As stated previously, this Court deferred acceptance of the

guilty plea pending completion of the PSR.  The PSR was finalized

on January 30, 2013 and sentencing was scheduled for February 13,

2013.  Notably, the PSR contained detailed information from the

seven cooperating witnesses relied upon by the Government in the

criminal complaint.  PSR ¶¶ 13-103.  Prior to sentencing, the

Government and defense counsel submitted briefs in support of the

guilty plea.  In its submission to the Court, the Government

proffered that, inter alia, this Court should accept the proposed

27

plea agreement because the Government would have to rely on drug dealers and murderers as witnesses.  Exhibit C at 6-13; 15.  After hearing argument from counsel for Jones and the Government, this Court concluded that the plea agreement was justified and accepted it.  Id. at 16.  Prior to imposing sentence, Jones was offered the opportunity to address the Court but declined.  Id. at 16.  Once again, Jones said nothing about obtaining additional information regarding the cooperating witnesses.

The record from Jones's guilty plea clearly shows that he was fully aware of the rights he was waiving by pleading guilty, that he was satisfied with counsel's representation, and that he entered his guilty plea free of any threats, promises or other inducements.  Jones should therefore be held to the statements he made at his guilty plea hearing and his claims to the contrary are clearly insufficient to defeat his representations at the hearing. Specifically, Jones suggests that, but for counsel's advice that Jones should plead guilty, he would not have pleaded guilty if the Government would have provided the alleged exculpatory or impeachment material.

Where, as here, a defendant makes nothing more than speculative and conclusory allegations, such allegations clearly do not warrant further inquiry.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977); Machibroda v. United States,  368 U.S. 487,

495-96 (1962).  For example, in <u>United States v. Dawson</u>, 857 F.2d

923, 928 (3d Cir. 1988), the petitioner alleged that a witness had

seen the Government informant "manufacturing evidence," without

stating "what that evidence was, much less how it was being

'manufactured.'"  The Third Circuit held that this allegation was

"too vague to warrant further investigation in a court."  <u>See also</u>

<u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 301 (3d Cir. 1991) (bald

assertions and conclusory allegations do not provide sufficient

ground to require an evidentiary hearing); Rule 2(b) of the Rules

Governing Section 2255 Proceedings (petition "shall set forth in

summary form the facts supporting each of the grounds thus

specified").  Without such details, it is impossible for the Court

to find that prejudice to Jones occurred.

A defendant who enters a voluntary and unconditional guilty

plea waives all nonjurisdictional defects and defenses.  <u>United</u>

<u>States v. Terpack</u>, 316 Fed. Appx. 122, 124 (3d Cir. 2009)

(unpublished opinion), <u>citing</u> <u>United States v. Ptomey</u>, 366 F.2d

759, 760 (3d Cir. 1966) (parenthetical omitted); <u>see also</u> <u>United</u>

<u>States v. Tamburro</u>, 97 Fed. Appx. 378, 380 (3d Cir. 2004)

(unpublished opinion) (a defendant who pleads guilty "waives

his/her right to subsequently raise constitutional challenges to

the conviction."  "The Supreme Court has held, 'When a criminal

defendant has solemnly admitted in open court that he is in fact

guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" <u>Id.</u>, <u>quoting</u> <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  Moreover, "in applying the <u>Tollett</u> rationale," the Third Circuit has held that "'even deprivation[s] of constitutional rights occurring prior to the entry of a guilty plea may not be asserted in subsequent proceedings.'" <u>Tamburro</u>, 97 Fed. Appx. At 381, <u>quoting</u> <u>United States v. Palmer</u>, 574 F.2d 164, 167 (3d Cir. 1978).

Based on the foregoing, Jones cannot establish that his unconditional guilty plea was somehow rendered involuntary as a result of counsel's alleged ineffectiveness.  He simply cannot satisfy his burden of establishing that he was prejudiced by counsel's representation during the guilty plea process in light of his sworn statements during the guilty plea and sentencing hearings, and the favorable terms of his guilty plea agreement. Jones's claims are clearly without merit and should be denied.

**D.   Jones's <u>Alleyene</u> Claims Are Meritless.**

Jones contends that this Court erred in making factual determinations at sentencing in violation of the United States Supreme Court's decision in <u>Alleyne v. United States</u>, 133 S.Ct. 2151 (2013), and that counsel somehow rendered ineffective

30

assistance during the guilty plea process with respect to the applicability of Alleyene.  Jones's claims misapprehend the applicability of Alleyene and, in any event, are meritless.

In Alleyne, the Supreme Court extended the rule of Apprendi v. New Jersey, 530 U.S. 466 (2000) that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum," whether the statute calls it an element or a sentencing factor, "must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 490.  Alleyne held that any fact that increases a mandatory minimum sentence for a crime is an "element" of crime, not a "sentencing factor," that must be submitted to jury and found beyond a reasonable doubt.  133 S.Ct. at 2155 (overruling Harris v. United States, 536 U.S. 545 (2002)).

The Court took care to limit its holding to cases involving statutory mandatory minimum sentences, and explain that it did not apply to increases in a sentence that resulted from the sentencing court's exercise of discretion to increase the sentence based on judicial fact-finding:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail.  Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury.  We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.

31

<u>Alleyne</u>, 133 S.Ct. at 2163 (citing <u>Dillon v. United States</u>, 560 U.S. 817, 828-29 (2010)).

Jones's claims fail for two independent and sufficient reasons.  First, this Court did not impose a mandatory minimum sentence in this case.  Rather, it imposed a sentence on the only count of conviction, conspiracy to distribute and possession with intent to distribute crack cocaine, which carries a maximum sentence of life imprisonment.  <u>See</u> 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

Simply put, this Court did not impose a mandatory minimum sentence.  <u>Alleyne</u> has no application where, as here, the sentencing court properly treats the Guidelines as advisory rather than mandatory and understands that it can impose a sentence well below the range.  "<u>Alleyne</u> did not curtail a sentencing court's ability to find facts relevant in selecting a sentence within the prescribed statutory range."  <u>United States v. Smith</u>, 751 F.3d 107 (3d Cir. 2014).  <u>Accord</u>, <u>United States v. Cardenas-Borbon</u>, 2014 WL 820262, *8-9 (M.D. Pa. 2014)("<u>Alleyne</u> did not abrogate <u>United States v. Booker</u>, 543 U.S. 220 (2005), which held that the Guidelines Manual is advisory and that the court may make factual findings that increase a defendant's Guidelines sentencing range without necessarily violating <u>Apprendi</u>").

32

"Alleyne is inapplicable to a sentence such as that received by [Jones], namely, one that was imposed pursuant to Rule 11(c)(1)(C) and the parties's stipulated plea agreement." United States v. Shelby, 2013 WL 6910416, *4 fn. 3 (C.D.Ca. 2013). Where, as here, "[t]he record shows that the Sentence was not based upon any factual findings made by the Sentencing Court judge and, rather, is of a length that the parties bargained for and set forth in the plea agreement . . . [t]he Apprendi . . . line of cases from which Alleyne flows are not applicable when a district court . . . accepts a stipulated sentence under Rule 11(c)(1)(C)." Shelby, supra, at *4 fn. 3, citing United States v. Graham, 466 F.3d 1234, 1240 (10th Cir. 2006); United States v. Sieslowski, 410 F.3d 353, 364-65 (7th Cir. 2005); United States v. Sahlin, 399 F.3d 27, 32-33 (1st Cir. 2005).

Second, as the Third Circuit recently explained, "the rule of criminal procedure announced by the Supreme Court in Alleyne does not apply retroactively to cases on collateral review." United States v. Reyes,-- F.3d --, 2014 WL 2747216, *1 (3d Cir., June 18, 2014). For that reason as well, Jones's Alleyne claims must be rejected.

**IV.   CONCLUSION**

For the reasons set forth above, the Court should dismiss the Motion under 28 U.S.C. § 2255 without appointing counsel and without a hearing.

Respectfully submitted,


/s/ STEVEN D'AGUANNO
STEVEN D'AGUANNO
Assistant U.S. Attorney

February 10, 2015
Camden, New Jersey

<u>CERTIFICATE OF SERVICE</u>

I certify that I have served or caused to be served a copy of (1) the United States' Opposition to Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255; (2) all Exhibits; and (3) a proposed form of order via first class mail upon the following:

    Jeffrey Jones, #41452-050
    FCI McDowell
    Federal Correctional Institution
    P.O. Box 1009
    Welch, WV 24801


                              <u>/s/ STEVEN D'AGUANNO</u>
                              STEVEN D'AGUANNO
                              Assistant United States
                              Attorney

February 10, 2015
Camden, New Jersey