UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEFFREY JONES,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civ. No. 14-4655 (RBK)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I.    INTRODUCTION

Petitioner, Jeffrey Jones, seeks relief pursuant to 28 U.S.C. § 2255 from his federal conviction and sentence. For the following reasons, Mr. Jones' § 2255 motion will be denied.

## II.    BACKGROUND

In January, 2012, a criminal complaint was issued against Mr. Jones for conspiring with others to distribute and possess with intent to distribute crack cocaine from 1990 to 2007. In August, 2012, Mr. Jones waived his right to prosecution by indictment and consented to prosecution by information. On August 21, 2012, Mr. Jones and the government filed a plea agreement with this Court. Among the things that Mr. Jones agreed to in that plea agreement was the following:

> Jeffrey Jones knows that he has, and voluntarily waives, the right to file any appeal, and collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence does not exceed a term of imprisonment of 240 months and 12 years of supervised release.

(Dkt. No. 11-2 at p.7-8) Furthermore, on that same day, this Court conducted a change of plea hearing. At the change of plea hearing, the following colloquy took place between Mr. Jones and this Court:

> Q: Now in paragraph eight, you give up some very important rights to appeal. Do you understand normally you'd have the right to appeal or file a motion or a writ or in some way attack any sentence that I impose upon you. Do you understand that?
> A: Yes.
> Q: The government has rights to appeal or file motions or writs regarding any sentence I impose. But under paragraph eight, you're willing to give up these very important rights to appeal or file a motion or a writ or in any way challenge the sentence under a certain condition and that condition is, that if I sentence you to a sentence of imprisonment in accordance with this plea agreement, then you're going to give up your rights to appeal or file a motion or a writ. In other words, if I do agree to give you 240 months, that's it and you're never going to be able to change that sentence. Do you understand that?
> A: Yes.
> Q: Furthermore in this paragraph you agree that any of these other stipulations are binding and you cannot appeal or file a motion saying I was wrong to accept the stipulation because you've agreed to it. Do you understand and agree with that?
> A: Yes.

(Dkt. No. 11-3 at p.24-25) Later on at the hearing, this point was re-emphasized in a colloquy between the government's attorney, the Court and Mr. Jones as follows:

> Q [Government Attorney]: Just one other thing, your Honor, which is that I understand from speaking to counsel that in addition to all the pretrial rights and this may have been covered by the court, the defendant understands that he's not going to be able to litigate. There's going to be no further litigation either in this court if this plea is accepted or in an Appellate Court of any issues that could have been brought up pretrial like suppression, that he could have filed a suppression motion or Speedy Trial motion or any other motion that he understands that this is an unconditional plea that waives all of those issues.
> THE COURT: You know that.
> THE DEFENDANT: Yes.
> THE COURT: If I accept this, it's over.
> THE DEFENDANT: Yes.

> THE COURT: All right. You're not going to be able to challenge anything about this prosecution or the sentence you get. Do you understand that?
> THE DEFENDANT: Yes.

(Dkt. No. 11-3 at p.39-40) This Court then deferred accepting the guilty plea pending the completion of the pre-sentence report ("PSR").

Subsequently, on February 13, 2013, this Court accepted Mr. Jones' guilty plea on one count of conspiracy to distribute and possession with intent to distribute 280 grams or more of crack cocaine. He was sentenced to 240 months imprisonment to be followed by twelve years of supervised release. Mr. Jones did not file a direct appeal.

Mr. Jones filed his § 2255 motion on July 22, 2014 pursuant to the prisoner mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988); *Maples v. Warren,* No. 12–0993, 2012 WL 1344828, at *1 n. 2 (D.N.J. Apr. 16, 2012) ("Often times, when the court is unable to determine the exact date that a petitioner handed his petition to prison officials for mailing, it will look to the signed and dated certification of the petition."). However, his original motion was administratively terminated because it was not filed on the proper form. Subsequently, this Court received petitioner's § 2255 motion on the proper form on August 21, 2014.

Mr. Jones' § 2255 motion raises the following substantive claims:

1. The government committed reversible discovery error by not handing over all exculpatory and impeachment material evidence to Mr. Jones within fourteen days of his arraignment ("Claim I").

2. Reversible error occurred when the court applied an extra ten-year sentencing enhancement to him that was not proven beyond a reasonable doubt ("Claim II").

3. Mr. Jones did not make a knowing and intelligent plea because the government did not hand over all exculpatory impeachment material ("Claim III").

4. Ineffective assistance of counsel for failing to raise the issues in Claims I-III ("Claim IV").

In addition to these four substantive habeas claims, Mr. Jones asserts that equitable tolling applies to make his § 2255 motion timely.

The government filed an opposition to Mr. Jones' § 2255 motion. Mr. Jones then filed two reply briefs.

### III. LEGAL STANDARD FOR § 2255 MOTION

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds ... [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth,* 432 F.3d 542, 545 (3d Cir.2005) (quoting *Gov't of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989)) (citing R. Governing § 2255 Cases R. 4(b)). A District Court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte,* 865 F.2d at 62).

### IV. DISCUSSION

A. <u>Timeliness</u>

The government asserts in its brief that Mr. Jones' § 2255 motion should be dismissed because it is untimely. A petitioner needs to file his § 2255 motion within one-year of when the judgment of conviction became final. *See* 28 U.S.C. § 2255(f). "If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and

4

the statute of limitation begins to run, on the date on which the time for filing such an appeal expired." *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Mr. Jones did not file an appeal in this case, therefore, his judgment became final fourteen days thereafter on February 27, 2013. *See* FED. R. APP. P. 4(b). Thus, Mr. Jones needed to file his § 2255 motion on or before February 27, 2014.

As described above, Mr. Jones did not file his original 2255 motion until July 22, 2014, or almost five months after his one-year statute of limitations period expired. However, he claims that he is entitled to equitable tolling. More specifically, he claims that he was placed in the "SHU" from October, 2013 until May, 2014. While in the "SHU" he did not receive his legal mail/work to file a timely habeas petition. He thus claims that this constitutes excusable neglect. (*See* Dkt. No. 3 at p.14) In his second reply brief, Mr. Jones states that he was without access to his legal materials and access to a reasonable law library during this six month period. (*See* Dkt. No. 14 at p.3) He claims that the law libraries that were available to him during this period were "wholly inadequate with outdated legal books and a very limited amount of time to visit them." (*See id.* at p.5) Thus, applying equitable tolling, Mr. Jones submits that this Court should construe his § 2255 motion as timely.

"[E]quitable tolling permits untimely habeas filings in 'extraordinary circumstances.'" *United States v. Thomas*, 713 F.3d 165, 174 (3d Cir. 2013) (citing *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998)). In determining whether equitable tolling should apply, the unique circumstances of each petitioner seeking relief under § 2255 must be taken into account. *See id.* (citing *Pabon v. Mahaney*, 654 F.3d 385, 399 (3d Cir. 2011)). "[E]quity permits extending the statutory time limit when a defendant shows that (1) 'he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

timely filing.'" *Id.* (citing *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2562-63 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). Nevertheless, equitable tolling should be used sparingly, *see id.* (citations omitted), and "[m]ere excusable neglect is insufficient." *Id.* (citing *Robinson v. Johnson*, 313 F.3d 128, 142 (3d Cir. 2002)

In *Thomas*, the Third Circuit analyzed whether to equitably toll the statute of limitations in a § 2255 case. In that case, the Third Circuit declined to apply equitable tolling by stating as follows:

> Although temporarily transferred to state custody, Thomas was in federal custody with access to legal materials for approximately nine months, including almost seven weeks leading up to the expiration of his limitations period. Thomas provides no support for a finding that he was diligent, nor does he explain the necessity of the materials he claims he was deprived of. . . . Although his transfer to state custody may have made it more difficult to file a timely § 2255 motion, increased difficulty does not, by itself, satisfy the required showing of extraordinary circumstances.

*Thomas*, 713 F.3d at 174 (internal citations omitted). Additionally, the difficulties of prison life like transfers or solitary confinement do not qualify as extraordinary circumstances warranting equitable tolling. *See Coker v. United States*, No. 13-0349, 2016 WL 310751, at *5 (D.N.J. Jan. 26, 2016) (stating that difficulties of prison life like transfers standing alone do not establish extraordinary circumstances to warrant equitable tolling); *United States v. Green*, Crim. No. 07-0271, 2013 WL 606341, at *3 (W.D. Pa. Feb. 19, 2013) ("[D]ifficulties attendant to prison life, such as solitary confinement, restricted access to the law library and an inability to secure court documents, are routine restrictions of prison life and do not qualify as 'extraordinary circumstances' warranting equitable tolling.") (citing *Gant v. Goord*, 430 F. Supp. 2d 135, 139 (W.D.N.Y. 2006); *Cary v. Virginia*, 2009 WL 1810009 (E.D. Va. June 24, 2009); *Bellard v. McNeil*, 2009 WL 1149144 (S.D. Fla. Apr. 29, 2009)). Nevertheless, this Court is also mindful

of the fact that a petitioner's lack of access to his legal papers may be grounds to equitably toll the statute of limitations. *See Spencer v. Magrady*, No. 10-0703, 2010 WL 5830500, at *4 (E.D. Pa. Dec. 1, 2010) (collecting cases where equitable tolling applied when petitioner was denied his legal papers by prison officials), *report and recommendation adopted*, 2011 WL 673738 (E.D. Pa. Feb. 16, 2011).

To the extent that Mr. Jones argues that equitable tolling should apply because he had limited access to the law library during his period of time in segregated housing, as well as the inadequacy of the law library, this alone is insufficient to warrant equitable tolling in this case. Indeed, as one court in this District has noted:

> the mere fact that the prison law library is inadequate, standing alone, which is the only factual allegation Petitioner makes in this regard, does not serve to establish extraordinary circumstances necessary to invoke equitable tolling in this case. *See Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000); *Dickinson v. Masan,* No. 3:11–cv–700–MEF WO, 2014 WL 495363, *7 (M.D. Ala. Feb. 6, 2014). *See also Miller v. Florida,* 307 F. App'x 366, 368 (11th Cir. 2009) ("even restricted access to a law library, lock-downs, and solitary confinement do not qualify as [extra]ordinary circumstances warranting equitable tolling"); *Bell v. Secretary, Dept. of Corrections,* 248 F. App'x 101, 104–105 (11th Cir. 2007) (holding that inability to access prison law library was not extraordinary circumstance beyond prisoner's control that prevented him from timely filing his habeas petition despite his due diligence). Rather, a petitioner must show that the law library was inadequate and this inadequacy actually prevented him from timely filing his habeas petition. *See Spencer v. Magrady,* Civil Action No. 10–703, 2010 WL 5830500, *7 (E.D. Pa. Dec. 1, 2010) (holding that "a petitioner must show 'that the alleged shortcomings in the library or legal assistance program actually hindered his efforts to pursue a legal claim' ") (quoting *Jones v.. Armstrong,* 367 F. App'x 256, 258 (2d Cir. 2010)).

*Wilson v. Sweeney*, No. 11-1201, 2014 WL 714920, at *7 (D.N.J. Feb. 24, 2014). In *Wilson*, the court noted in part that the petition did not demonstrate how the inadequacy of the law library prevented him from filing his petition on time.

7

Like the petitioner in *Wilson*, Mr. Jones makes no specific claim of how the purported inadequacies of the law library actually prevented him from filing his petition on time. Mr. Jones' ignorance of the law is also insufficient to equitably toll the statute of limitations. *See Thomas v. New Jersey*, No. 14-0828, 2017 WL 438741, at *1 (D.N.J. Jan. 31, 2017) (*citing Ayers v. Phleps*, 723 F. Supp. 2d 718, 722 (D. Del. 2010)).

It is not as clear as to whether equitable tolling should apply with respect to Mr. Jones' allegations that he lacked access to his legal materials from October, 2013 until May, 2014. As stated above, the lack of access to legal material can be grounds to equitably toll the statute of limitations. *See, e.g.*, *Spencer*, 2010 WL 5830500, at *4 (collecting cases). In *Thomas*, the Third Circuit declined to apply equitable tolling by noting that the petitioner had access to his legal materials for nine months of the limitations period (including seven weeks immediately prior to the statute of limitation expiration), and that the petitioner did not explain the necessity of the materials he claims he was deprived of. *See* 713 F.3d at 174.

In this case, Mr. Jones presumably had access to his legal materials for a period of seven-to-eight months during the applicable one-year limitations period (a period close to the length of time that the petitioner had access in *Thomas*). However, unlike the petitioner in *Thomas*, Mr. Jones purportedly did not have access to his legal materials during the months leading up to the expiration of his statute of limitations in February, 2014. A lack of access to legal materials at the end of the limitations period may be "more serious" than at the beginning of the limitations period. *See, e.g.*, *Savage v. United States*, No. 15-8100, 2016 WL 4260786, at *3 (D.N.J. Aug. 10, 2016) (noting that the Third Circuit has observed that the lack of access to legal materials is more serious at the end of a limitations period). Indeed, in this case, Mr. Jones was purportedly without his legal materials for approximately the final four months of his limitations period.

8

However, *Thomas* and other cases appear to recognize that for equitable tolling to apply where a petitioner claims that he was deprived of materials, a petitioner needs to explain the necessity of the materials he was deprived of to warrant a finding that equitable tolling should apply. *See Thomas*, 713 F.3d at 174; *see also Coker*, 2016 WL 310751, at *5 (declining to grant equitably tolling where petitioner failed to explain why he could not have written to the court before the limitations period expired seeking more time and petitioner did not explain how deprivation of materials for two months of limitations period prevented him from filing a § 2255 motion or seeking an extension). In this case, Mr. Jones fails to explain the necessity of his materials to his filing a § 2255 motion (or at a minimum, why he needed those materials to seek an extension of time to file a § 2255). Accordingly, this Court finds that petitioner is not entitled to equitable tolling. Therefore, the § 2255 motion is untimely and can be denied on that basis.

B. Merits

In the event that Mr. Jones' § 2255 motion could be considered timely based on equitable tolling, and for purposes of completeness, this Court will also address the merits of Mr. Jones' claims.

    i.    *Claim I – Failure to Turn Over Evidence*

In Claim I, Mr. Jones asserts that the government failed to turn over evidence to him prior to his guilty plea. Mr. Jones claims that the government failed to turn over all evidence concerning seven cooperating witnesses. He states that these witnesses admitted to "serial acts of murders & other violent crimes as well as various drug crimes[.]" (Dkt. No. 3 at p.28) Thus, Mr. Jones is in effect arguing that the government failed to turn over impeachment evidence to him prior to his guilty plea.[1]

---

[1] Mr. Jones alludes to "other recanted accounts favorable to [him]" in his § 2255 motion. However, he does not specify what these "other recanted accounts" encompass. Therefore, this

A due process violation under *Brady v. Maryland,* 373 U.S. 83 (1963), "occurs if: (1) the evidence at issue is favorable to the accused, because either it is exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn,* 642 F.3d 126, 133 (3d Cir. 2011) (citations omitted). Materiality requires "a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." *Id.* (citing *Giglio v. United States,* 405 U.S. 150, 154 (1972)).

District courts in this circuit have recently noted that "[i]t remains an open question in this circuit whether a petitioner who pled guilty was entitled to *Brady* material before entering his plea, and the remaining circuits are split as to that question." *Shapiro v. United States*, No. 14-1316, 2017 WL 896987, at *5 (D.N.J. Mar. 6, 2017) (collecting cases indicating a split as to whether *Brady* applies to cases involving guilty pleas); *see also Kokinda v. Coleman*, No. 13-2202, 2017 WL 2296900, at *19 (E.D. Pa. Apr. 27, 2017) (noting it is an open question in the Third Circuit whether a petitioner who pleads guilty is entitled to other *Brady* material before pleading). However, at least one court in this District has noted that the Supreme Court has strongly suggested that *Brady* does not impose due process obligations on the Government at the pre-indictment stage. *See United States v. Sgarlet*, 705 F. Supp. 2d 347, 358-59 (citing *United States v. Ruiz*, 536 U.S. 622, 630 (2002)). Indeed, in *Sgarlet*, the Court noted that "the defendant 'was under no compulsion to negotiate with the government, and all he needed to do was wait for a superseding indictment if in weighing his options he wanted to assess the discovery that would become available under Rule 16.'" *Id*. at 359 (quoting *United States v. Underwood*, 174 F.3d 850, 854 (7th Cir. 1999)).

---

Court presume that it is the cooperating witnesses criminal histories and nefarious pasts that he is alleging were improperly not disclosed to him by the government.

It is true that Mr. Jones waived indictment and consented to prosecution by information. Nevertheless, for the reasons that follow, this Court need not resolve the issue of whether *Brady* material needs to be disclosed in a case such as this where a petitioner pleads guilty pre-indictment. Indeed, the Supreme Court's holding in holding in *Ruiz*, 536 U.S. 622, governs the outcome of Mr. Jones' arguments in Claim I.

The Supreme Court has extended *Brady* to include a requirement that prosecutors to disclose exculpatory evidence favorable to the accused including impeachment evidence. *See Giglio*, 405 U.S. at 153, 154. However, in *Ruiz*, 536 U.S. at 625, the Supreme Court analyzed whether the Fifth and Sixth Amendments require federal prosecutors before entering a plea agreement with a criminal defendant to disclose impeachment evidence relating to any informants or witnesses. Ultimately, the Supreme Court concluded that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633. In analyzing this issue, the Supreme Court noted that the question "concerns a federal criminal defendant's waiver of the right to receive from prosecutors exculpatory impeachment material – a right that the Constitution provides as part of its basic 'fair trial' guarantee." *Id.* at 628. However, "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ("knowing," "intelligent," and "sufficient[ly] aware"). *Id.* at 629. Additionally, the Supreme Court explained that:

> the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor. . . . It is difficult to distinguish, in terms of importance, (1) a defendant's ignorance of grounds for

11

> impeachment of potential witnesses at a possible future trial from
> (2) the varying forms of ignorance at issue in these cases.

*Id.* at 630-31 (internal citations omitted). Furthermore, the Supreme Court noted that "a constitutional obligation to provide impeachment evidence during plea bargaining prior to the entry of a guilty plea could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* at 631. Ultimately, the Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633.

*Ruiz* stands for the proposition that Mr. Jones was not entitled to have the government disclose the impeachment evidence of the cooperating witnesses prior to him pleading guilty. Accordingly, Mr. Jones is not entitled to relief on Claim I.

    ii.    *Claim II – Failure to Find Ten Year Sentencing Enhancement Beyond a Reasonable Doubt*

In Claim II, relying on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), Mr. Jones asserts that he was sentenced to an additional ten years due to an enhancement that was not proved beyond a reasonable doubt. "In *Alleyne*, the Supreme Court ... clarified that, under the Sixth Amendment, "'any facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime" and must be found beyond a reasonable doubt." *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014) (quoting *Alleyne*, 133 S. Ct. at 2160 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). While the Supreme Court held that facts that increase mandatory minimums must be submitted to the jury, the Supreme Court was also clear to recognize that "broad sentencing discretion, informed by judicial factfinding, does

not violate the Sixth Amendment." *Alleyne*, 133 S. Ct. at 2163 (citing *Dillon v. United States*, 130 S. Ct. 2683, 2692 (2010))).

Mr. Jones is not entitled to relief on Claim II for two reasons. First, Mr. Jones was sentenced within the prescribed statutory range of ten years to life imprisonment. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. As the Third Circuit has noted, "*Alleyne* did not curtail a sentencing court's ability to find facts relevant in selecting a sentence *within* the prescribed statutory range." *United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014) (citing *Alleyne*, 133 S. Ct. at 2160). In this case, Mr. Jones' sentence of 240 months was within the statutory prescribed sentencing range. Therefore, Mr. Jones is not entitled to relief based on *Alleyne*.

Additionally, Mr. Jones was sentenced on February 13, 2013. The Supreme Court decided *Alleyne* on June 17, 2013. As noted by the Third Circuit, "*Alleyne* does not apply retroactively to cases on collateral review. *Reyes*, 755 F.3d at 212 (footnote omitted). Thus, *Alleyne* is even inapplicable in these collateral review proceedings.[2] Accordingly, Mr. Jones fails to show that he is entitled to relief on the merits on Claim II.

    iii.    *Claim III – Knowing and Intelligent Plea*

In Claim III, Mr. Jones asserts that he could not have made a knowing and intelligent guilty plea because the government did not hand over the impeachment evidence outlined in Claim I. "In order for a guilty plea to comply with the requirements of the Due Process Clause of the Fifth Amendment, it must be knowing, voluntary and intelligent." *United States v. Tidwell*, 521 F.3d 236, 251 (3d Cir. 2008) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)). As described in discussing Claim I, the government did not have a duty to disclose the

---

[2] Indeed, Mr. Jones appears to concede as much in his reply brief. (*See* Dkt. No. 13 at p.12 ("Recognizing that *Alleyne* has not been declared retroactive by the Supreme Court, or by any other federal circuit court, Jones merely requests that the Court preserve this argument for future consideration if and when *Alleyne* is declared retroactive."))

13

impeachment evidence to Mr. Jones. Indeed, to reiterate in *Ruiz* the Supreme Court stated as follows:

> impeachment information is special in relation to the *fairness of a trial,* not in respect to whether a plea is *voluntary* ("knowing," "intelligent," and "sufficient[ly] aware"). Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant. *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case"). And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it.

*Ruiz*, 536 U.S. at 629 (emphasis in original).

Accordingly, Mr. Jones' argument in Claim III that the failure to turn over impeachment evidence prior to his guilty plea necessitates a finding that his plea was not voluntary is without merit. Therefore, Mr. Jones is not entitled to relief on Claim III.

    iv.    *Claim IV – Ineffective Assistance of Counsel*

In Claim IV, Mr. Jones asserts an ineffective assistance of counsel claim. More specifically, he claims in part that his counsel was ineffective "for intentionally failing to hold the Government to its automatic obligation to hand over all exculpatory and impeachment material evidence[.]" (Dkt. No. 3 at p.37)

The Sixth Amendment guarantees each criminal defendant not just assistance but effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-pronged test for demonstrating ineffectiveness.

First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir.

2013) (noting that it is necessary to analyze an ineffectiveness claim in light of all of the circumstances) (citation omitted). A petitioner must identify the particular acts or omissions that are challenged as unprofessional. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, then counsel's strategic choices are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be

substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

In the context of a guilty plea, this prejudice requirement requires that defendant "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

Mr. Jones is not entitled to relief on Claim IV. Indeed, as described *supra*, the government was not obligated to provide him with the impeachment material of the cooperating witnesses prior to Mr. Jones pleading guilty. Therefore, Mr. Jones' attorney's performance did not fall below an objective standard of reasonableness for failing to hold the government to its duty to disclose this information since there was no duty on the part of the government to disclose that information at that time.

Furthermore, Mr. Jones is not entitled to relief to the extent he claims that his counsel was ineffective for failing to raise a claim under *Alleyne*. First, *Alleyne* was decided after Mr. Jones pled guilty and was sentenced. Second, as described *supra*, Mr. Jones was sentenced within the statutory prescribed sentencing range. Therefore, counsel's performance did not fall below an objective standard of reasonableness on this argument as well.

Accordingly, Mr. Jones is not entitled to relief on any of his ineffective assistance of counsel arguments in Claim IV.

## V. MOTION TO EXPEDITE

On August 28, 2017, this Court received Mr. Jones' motion to expedite. (*See* Dkt. No. 16) Because Mr. Jones' § 2255 motion is being denied for the reasons stated *supra*, his motion to expedite will also be denied.

## VI. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Had this Court only denied Mr. Jones' § 2255 motion on timeliness grounds, this Court may have been inclined to grant a certificate of appealability. However, as Mr. Jones' claims fail on the merits as well, a certificate of appealability shall not issue.

## VII. CONCLUSION

For the foregoing reasons, Mr. Jones' § 2255 motion will be denied as will his motion to expedite. A certificate of appealability shall not issue. An appropriate order will be entered.

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: September 20, 2017